IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTINA L. DEMOTTE,                          07-CV-6374-BR

           Plaintiff,                          OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

           Defendant.


KATHRYN TASSINARI
MARK A. MANNING
Harder Wells Baron & Manning PC
474 Willamette St., Suite 200
Eugene, Oregon  97401
(541) 343-4527

           Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1   -  OPINION AND ORDER

**DAVID MORADO**
Office of the General Counsel
**NANCY A. MISHALANIE**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2545

       Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Christina L. Demotte seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he found Plaintiff ineligible for Supplemental Security Income (SSI) payments under Title XVI of the Social Security Act.

    On December 5, 2008, Defendant filed a Motion to Remand (#18) in which Defendant requests the Court to remand the matter for further proceedings.  Plaintiff, however, requests the Court to remand the matter for an immediate award of benefits.

    This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

    Following a thorough review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.


2   -  OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Plaintiff filed her applications for Disability Insurance Benefits (DIB) and SSI payments on May 9, 2005, alleging an onset date of February 8, 2005.  Tr. 27, 67, 506-09.[1]  The applications were denied initially and on reconsideration.  Tr. 30, 35, 495-504.  An Administrative Law Judge (ALJ) held a hearing on May 2, 2007.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified.  At the hearing, Plaintiff requested the ALJ to dismiss her DIB application because she realized she was not eligible.  The ALJ subsequently dismissed Plaintiff's DIB application.

The ALJ issued an opinion on August 20, 2007, in which he found Plaintiff was not disabled and, therefore, was not entitled to benefits.  That decision became the final decision of the Commissioner on November 1, 2007, when the Appeals Council denied Plaintiff's request for review.  Tr. 6.

## BACKGROUND

Plaintiff was 42 years old at the time of the hearing. Tr. 515.  She has obtained her GED.  Tr. 515.  Plaintiff previously worked as a sales clerk and a hotel maid.  Tr. 529-30.

Except when noted, Plaintiff does not challenge the ALJ's

---

[1] Citations to the official transcript of record filed by the Commissioner on June 10, 2008, are referred to as "Tr."

summary of the medical evidence.  After reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 17-25.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal

quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R.

5   -  OPINION AND ORDER

§ 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknow-ledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must determine the claimant's RFC, which "is an assessment of the sustained, work-related physical and mental activities" that the claimant can still do "on a regular and continuing basis" despite his limitations.  20 C.F.R. § 416.920(e).  *See also* Soc. Sec. Ruling (SSR) 96-8p.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the

sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date. Tr. 17.

At Step Two, the ALJ found Plaintiff has the severe impairments of depression and post-traumatic stress disorder (PTSD). Tr. 17.

At Step Three, the ALJ found Plaintiff does not have an impairment or a combination of impairments that meets or equals a Listing. The ALJ assessed Plaintiff's RFC and found she can perform a full range of work at all exertional levels; can understand, remember, and carry out short and simple instructions; can sustain concentration and persistence for simple work-related activities; can complete a normal work week; and cannot work with the general public. Tr. 18.

At Step Four, the ALJ found Plaintiff can perform her past relevant work as a hotel maid. Tr. 25.

At Step Five, the ALJ found Plaintiff is able to perform jobs that exist in significant numbers in the national economy. Tr. 25. The ALJ identified three examples of such work drawn from the testimony of the VE: dishwasher, cleaner, and laundry sorter. Tr.25. Thus, the ALJ concluded Plaintiff is not disabled and, therefore, is not entitled to benefits.

8    -   OPINION AND ORDER

## DISCUSSION

Plaintiff contends the ALJ erred when he did not consider the opinion of James Wahl, Ph.D., as to Plaintiff's inability to accept instructions and to respond appropriately to criticism; found Plaintiff's testimony was not entirely credible; and did not consider the lay-witness statements of Mary Hoy.  Plaintiff requests the Court to credit as true Dr. Wahl's opinion, Plaintiff's testimony, and Hoy's statements and, accordingly, to remand this matter for an immediate award of benefits.

**I.    Dr. Wahl.**

Plaintiff contends the ALJ erred when he failed to consider the opinion of Dr. Wahl, an examining physician, as to Plaintiff's limitations in accepting instructions and responding appropriately to criticism.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Thomas*, 278 F.3d at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32.

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

On October 5, 2005, Dr. Wahl completed a comprehensive evaluation of Plaintiff at the request of DDS[2] and found Plaintiff's report of her symptoms and her medical history to be reliable. Tr. 304. Dr. Wahl noted Plaintiff had a restricted affect and a markedly serious mood. Tr. 307. Dr. Wahl determined Plaintiff was in the low-average range of intellectual functioning with average vocabulary and low-to-average abstract reasoning. Tr. 307. Dr. Wahl also found Plaintiff was in the average range of visual recall and recognition. Tr. 307.

---

[2] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

Plaintiff produced an invalid Minnesota Multiphasic Personality Inventory (MMPI-2) profile because she asserted an improbably high number of unusual symptoms.  Dr. Wahl interpreted this invalid MMPI-2 profile as a "cry for help" and specifically stated he did not believe Plaintiff was malingering.  Tr. 308. Dr. Wahl concluded Plaintiff's clinical profile reflected "significant levels of depression, anxiety, and introversion." Tr. 308.  Dr. Wahl diagnosed Plaintiff with panic disorder, generalized anxiety disorder, severe and recurrent major depressive disorder, and borderline personality disorder. Tr. 308.  He assessed her GAF[3] score at 50.  Dr. Wahl opined Plaintiff could understand and follow short and simple instructions, should not have any contact with the public or close contact with co-workers because of her panic attacks, and "would not be able to handle even tactful criticism from supervisors without experiencing so much automatic guilt and blame that a panic attack or some other form of decompensation would be all but inevitable."  Tr. 308.  Dr. Wahl concluded

---

[3] The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100.  A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, few friends, unable to keep a job).  A GAF of 51-60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).  *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000).

Plaintiff would continue to display these symptoms and limitations even with continued treatment.  Tr. 308.

On October 5, 2005, Dr. Wahl also completed a mental RFC evaluation of Plaintiff in which he concluded Plaintiff was moderately limited in her ability to understand, to remember, and to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule; to maintain attendance and to be punctual; to travel in unfamiliar places or to use public transportation; to set realistic goals; and to make plans independently of others. Tr. 314.  Dr Wahl also concluded Plaintiff had marked limitations in maintaining social functioning, including interacting appropriately with the public, accepting instructions and responding appropriately to criticism, and getting along with co-workers without distracting them or exhibiting extreme behaviors.  Tr. 314.

In his assessment of Plaintiff's RFC, the ALJ considered all of the limitations identified by Dr. Wahl except for Plaintiff's inability to accept instructions and to respond appropriately to criticism.  In his Motion to Remand, Defendant concedes the ALJ's failure to do so was error.  Defendant, therefore, requests the Court to remand this matter for the purpose of allowing the ALJ to address all aspects of Dr. Wahl's opinion.

On this record, the Court concludes the ALJ erred when he

failed to consider the opinion of Dr. Wahl as to Plaintiff's inability to accept instructions and to respond appropriately to criticism because the ALJ did not provide legally sufficient reasons supported by the record for doing so.

**II.  Plaintiff's testimony.**

Plaintiff contends the ALJ erred when he found Plaintiff's testimony was not entirely credible.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what

testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

On June 14, 2005, Plaintiff completed an Adult Function Report in which she indicated she tries to care for her son and her pets. Tr. 107. Plaintiff reported she cannot be in public because she "has fear and anxiety." She also has difficulty sleeping, has trouble grooming herself because she "just doesn't care," and often forgets to eat. Tr. 107. She reported her friend, Mary Hoy, reminds her to groom herself, to eat, and to take her medications. Tr. 107-08. Plaintiff stated she prepares her own meals, but they merely consist of frozen meals and sandwiches. Tr. 108. Her son assists her in preparing her meals, or her son and Hoy prepare them. Tr. 108. Plaintiff also noted she performs household chores such as laundry and dishes two to four times a month, but "her girlfriends" usually do the household chores. Tr. 108.

Plaintiff stated she cannot go out alone because she "gets scared and paranoid." Tr. 109. She goes shopping only for necessities, only when she must, and only with Hoy. Tr. 109. Plaintiff also stated she has difficulty handling money and is "very irritable" with family, friends, and neighbors. Tr. 110-11. Plaintiff reported she is limited in her ability to walk, sit, talk, hear, remember, complete tasks, concentrate, understand, follow instructions, use her hands, and get along

14  -  OPINION AND ORDER

with others.  Tr. 111.  She noted she cannot pay attention or follow spoken or written instructions.  Tr. 111.  Plaintiff also stated she generally does not get along with authority figures, has been fired from two jobs because of her inability to get along with others, and does not handle stress or changes in routine well.  Tr. 112.

Plaintiff testified she has panic attacks that can be triggered by "almost anything," including trying to do laundry or taking a walk.  Tr. 524-25, 527.  She stated the effects of her panic attacks last for up to 90 minutes.  Tr. 523.  Plaintiff reported she is so depressed some days that she cannot take a shower or eat.  Tr. 525.  She also has difficulty sleeping.  Tr. 526.  Plaintiff also testified she had a breakdown in February 2005 and "was on the couch for a year and a half" because of it.  Tr. 528.

The ALJ did not conclude Plaintiff was malingering, so he was required to provide clear and convincing reasons for rejecting her testimony.  *Lester*, 81 F.3d at 834.  Clear and convincing reasons for discrediting a claimant's testimony include consideration of inconsistencies between testimony and conduct, daily activities, type and dosage of medication, failure to seek treatment or to follow prescribed treatment, and reports from physicians.  20 C.F.R. § 416.929.  *See also Bunnell*, 947 F.2d at 346.

The ALJ found Plaintiff was not entirely credible because she made several inconsistent statements.  The ALJ noted Plaintiff exaggerated about the length of her hospital stays in her statements to Dr. Wahl; for example, she stated she was hospitalized for psychiatric episodes three times:  February 2005 for six days, May 2005 for five days, and July 2005 for seven days.  Tr. 305.  The record, however, reflects Plaintiff visited the emergency room on February 8, 2005, for nausea, vomiting, and diarrhea, but she was not admitted to the hospital.  Tr. 241. Plaintiff also was only hospitalized for two days beginning on May 25, 2005, and for four days beginning on July 3, 2005. Tr. 250-56, 290.

The ALJ also noted Plaintiff reported to William Aurich, D.O., during her February 8, 2005, emergency-room visit that she lived alone.  Tr. 241.  The ALJ, however, found Plaintiff's statement was inconsistent with other statements she made; for example, Plaintiff reported to Dennis D. Weimer, M.D., on May 25, 2005, that she lives with her son; Plaintiff and Hoy both reported Plaintiff lives with her son in their June 12, 2005, Adult Function Reports; and Plaintiff reported to her therapist on July 14, 2005, that she lives with her son.  Tr. 90, 107, 254, 297.

The ALJ also noted in a March 18, 1998, clinical assessment performed at Coos County Mental Health and conducted by Lynda

16  -  OPINION AND ORDER

MacGregor, M.A., that Plaintiff denied ever having any legal
problems. Tr. 278. The record, however, reflects otherwise.
For example, on September 21, 1995, Plaintiff reported to Frank
Coffey, M.S., at Coos County Mental Health that she was on
probation for illegally obtaining telephone services, and
Plaintiff reported to Dr. Wahl on October 5, 2005, that she had
served 120 days in jail in 1998 for marijuana possession and
cultivation. Tr. 281, 305.

        The ALJ also found Plaintiff was not entirely credible
because she has been noncompliant with her treatment. Tr. 22-24.
The record reflects Plaintiff dropped out of individual therapy
on May 6, 2005, after three sessions, and Plaintiff testified
she also dropped out of group therapy. Tr. 267, 393, 517.

        On this record, the Court concludes the ALJ did not err when
he found Plaintiff was not entirely credible because the ALJ
provided legally sufficient reasons supported by substantial
evidence in the record for doing so.

**III. Lay-witness statements.**

        Plaintiff contends the ALJ erred when he failed to consider
the lay-witness statements of Plaintiff's friend and neighbor,
Mary Hoy.

        Lay statements regarding a claimant's symptoms are competent
evidence that the ALJ must consider unless he "expressly
determines to disregard such statements and gives reasons germane

17  -  OPINION AND ORDER

to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members."). An "ALJ's silent disregard of lay testimony about how an impairment limits a claimant's ability to work. . . contravenes . . . case law and the controlling regulations." *Stout v. Comm'r*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).

On June 12, 2005, Hoy completed an Adult Third-Party Function report. Tr. 90-97. Hoy stated she spends most of each day with Plaintiff, and they shop, talk, and garden. Tr. 90. Hoy stated Plaintiff does not like groups of people and does not get along well with others at times. Tr. 94. In fact, Plaintiff panics in stores that have too many people and runs to the car. Tr. 90. Although she gets along with her landlord, Plaintiff does not get along with authority figures such as police. Tr. 96. Plaintiff also has been fired from two jobs because of problems getting along with others. Tr. 96.

Hoy reported Plaintiff cares for her 16-year old son when she can and cares for one small dog and two cats with her son's assistance. Tr. 91. Plaintiff's impairments also cause her difficulty with sleeping. Tr. 91. Hoy reported Plaintiff does not dress as nicely as she used to, has to be reminded to bathe,

and forgets to eat.  Tr. 92.  Thus, Hoy must remind Plaintiff to groom herself and to take her medications.  Tr. 92.  Hoy stated Plaintiff prepares her own meals two or three times each week, but those meals consist of frozen dinners, instant noodles, and yogurt.  Tr. 92.  Plaintiff shops for food two or three times each month.  Tr. 93.  Even though Plaintiff attempts to do household chores or yard work, she is easily distracted and usually "winds up sitting and crying."  Tr. 92.

According to Hoy, Plaintiff leaves the house once or twice each day to visit Hoy, but Plaintiff rarely goes anywhere alone. Tr. 93.  Hoy takes Plaintiff to her medical appointments. Tr. 94.  Hoy also stated she writes checks for Plaintiff's bills, and Plaintiff pays her back in cash because Plaintiff does not have a checking or savings account.  Tr. 93.  Hoy reported Plaintiff has limitations in her ability to walk, sit, talk, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, and get along with others.  Tr. 95. Plaintiff also has difficulty following written and verbal instructions and can only pay attention to a task for one or two minutes before becoming distracted.  Tr. 95.  Hoy stated Plaintiff hides and cries when confronted with stress and does not handle changes in routine well.  Tr. 96.

In his Motion to Remand, Defendant concedes the ALJ erred when he failed to consider Hoy's statements.

On this record, the Court concludes the ALJ erred when he failed to give reasons germane to Hoy for disregarding her statements.

## REMAND

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the Court. *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.*  The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

Here the ALJ improperly rejected the opinion of Dr. Wahl as to Plaintiff's inability to accept instructions and to respond appropriately to criticism and failed to consider the lay-witness statements of Mary Hoy as to Plaintiff's limitations.  The first hypothetical posed by the ALJ to the VE did not include these limitations, and, therefore, the VE's conclusions that the ALJ relied on were based on an incomplete hypothetical.  After the ALJ posed a second hypothetical to the VE that included Plaintiff's inability to accept instructions and to respond appropriately to criticism as assessed by Dr. Wahl, the VE concluded a claimant with those limitations would be precluded from employment.  Tr. 533-35.  The ALJ, nevertheless, did not rely on the VE's conclusion as to the second hypothetical.

As noted, Plaintiff contends the Court should credit Dr. Wahl's entire opinion and Hoy's statements as true and, accordingly, remand the matter for the immediate payment of benefits.

When the ALJ does not provide legally sufficient reasons for rejecting a physician's opinion, the Court credits the opinion as true.  *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir 2004).  *See also Lester*, 81 F.3d at 834 (improperly rejected physician

opinion court credited as matter of law).  Accordingly, the Court credits Dr. Wahl's opinion as true and concludes, based on the second hypothetical to the VE that included the limitations identified by Dr. Wahl, that Plaintiff is disabled.

The Court notes, however, there is evidence in the medical record of substance abuse.  For example, Dr. Weimer reported a history of substance abuse and drug-seeking behavior on May 27, 2005.  Tr. 250.  In addition, Plaintiff's May 27, 2005, drug screen was positive for tetrahydrocannabinol (THC).  Tr. 250.  On April 14, 2005, Plaintiff reported to her therapist that she had "cut down to only using marijuana as needed."  Tr. 269.  On July 14, 2005, Plaintiff reported to her therapist that she used marijuana sometimes.  Tr. 296.  On August 17, 2005, reviewing physician Dorothy Anderson, Ph.D., noted polysubstance-abuse disorder on a psychiatric review technique form (PRT).  Tr. 355. In addition, Plaintiff admitted to Dr. Wahl that she began smoking marijuana when she was 13 years old and continued until a few months before his evaluation in October 2005.  Tr. 305. Plaintiff also reported to Dr. Wahl that she was jailed for 120 days in 1998 for marijuana possession and cultivation.  On January 31, 2006, Plaintiff reported to her therapist that she was currently using marijuana, and on July 14, 2005, reported she had used methamphetamine and LSD in the past.  Tr. 296, 395.

Plaintiff also admitted to Dr. Wahl in October 2005 that she had used LSD and methamphetamine since the age of 16, but she asserted she did not currently use either drug.  Tr. 305. Plaintiff also indicated she had abused alcohol in the past. Tr. 305.

When there is medical evidence of substance abuse and the claimant is found to be disabled, the ALJ must engage in the sequential five-step inquiry a second time without taking the claimant's substance abuse into account for the purpose of determining whether drug addiction or alcoholism "is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a).  Thus, even though the Court has found Plaintiff to be disabled, the ALJ must perform the five-step substance-abuse analysis.  Accordingly, there are "outstanding issues that must be resolved before a [final] determination of disability can be made." *Smolen*, 80 F.3d at 1292.

In addition, because a final determination of disability cannot be made on this record, the Court need not credit Hoy's statements as true.  *Id.* at 1273 (lay-witness statements to be credited only when no outstanding issues remain as to claimant's disability).

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the

23  -  OPINION AND ORDER

Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

With respect to future proceedings in this matter after remand, the Court notes § 406(b) of the Social Security Act "controls fees for representation [of Social Security claimants] in court." *Gisbrecht v. Barnhart*, 535 U.S. 789, 794 (2002)(citing 20 C.F.R. § 404.1728(a)). Under 42 U.S.C. § 406(b), "a court may allow 'a reasonable [attorneys'] fee . . . not in excess of 25 percent of the . . . past-due benefits' awarded to the claimant." *Id*. at 795 (quoting 42 U.S.C. § 406(b)(1)(A)). Because § 406(b) does not provide a time limit for filing applications for attorneys' fees and Federal Rule 54(d)(2)(B) is not practical in the context of Social Security sentence-four remands, Federal Rule of Civil Procedure 60(b)(6) governs. *Massett v. Astrue*, 04-CV-1006 (Brown, J.)(issued June 30, 2008). *See also McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006). To ensure that any future application for attorneys' fees under § 406(b) is filed "within a reasonable time" as required under Rule 60(b)(6), the Court orders as follows: If the Commissioner finds Plaintiff is disabled on remand and awards Plaintiff past-due benefits and if, as a result, Plaintiff intends to submit such application for attorneys' fees under § 406(b), Plaintiff shall submit any such

application within 60 days from receipt of the Notice of Award by the Commissioner.

IT IS SO ORDERED.

DATED this 3rd day of April, 2009.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge